OFFICE *of the* ATTORNEY GENERAL
GREG ABBOTT



United States Courts
Southern District of Texas
FILED
NOV 19 2004
Michael N. Milby, Clerk

November 17, 2004

Clerk, United States District Court
Southern District of Texas
Houston Division
515 Rusk, Room 5300
Houston, Texas  77002

Re:     *Joseph Andrew Prystash  v. Doug Dretke, Dir., TDCJ-CID*
        **Civil Action No. H-04-136**

Dear Clerk,

Enclosed please find copies of the petitioner's state court records for the above referenced case, which consist of six volumes of direct appeal records and one volume of state writ records (all contained in one box).  Please indicate the date of filing on a copy of the enclosed letter and return in the postage-paid envelope provided for your convenience.

Sincerely,

TINA J. DETTMER
Assistant Attorney General
Postconviction Litigation Division
Austin, Texas 78711
(512) 936-1400

TJD:em
Enclosures

cc:     Christine Kirchner          David Adler
        1200 Smith Ste 1400         6750 W Loop S.  Ste 120
        Houston, TX 77002-4496      Bellaire, TX 77401-4113

        William Scott Helfand       Richelieu Wheelan
        1200 Smith  Ste 1400        440 Louisiana Ste 900
        Houston, TX 77002-4496      Houston, TX 77002-4205

**DON STRICKLIN**
**FIRST ASSISTANT**



**DISTRICT ATTORNEY'S BUILDING**
**201 FANNIN, SUITE 200**
**HOUSTON, TEXAS 77002-1901**

# JOHN B. HOLMES, JR.
### DISTRICT ATTORNEY
### HARRIS COUNTY, TEXAS

July 2, 1998

Hon. Troy C. Bennett, Jr., Clerk
Court of Criminal Appeals
P O Box 12308, Capitol Station
Austin TX 78711

RE:   **JOSEPH ANDREW PRYSTASH VS. THE STATE OF TEXAS**
      CCA Case No. 72,572
      Trial Court No. 723036

Dear Mr. Bennett:

I wish to present oral argument in the above styled and numbered case in Austin on Wednesday, September 9, 1998 at 9:00 a.m.  I will be responding to the points of error as designated by opposing counsel.

A copy of this notice is being sent to the attorney of record for the appellant.

Sincerely,

**KIMBERLY APERAUCH STELTER**
Assistant District Attorney
Harris County, Texas
(713) 755-5826

/ps

cc:   Jan Morrow
      Robert Morrow
      Attorneys at Law
      6630 Cypresswood Dr. Suite 200
      Spring TX 77379

## *Janet Morrow*
ATTORNEY AT LAW
6630 Cypresswood Drive - Suite 200
Spring, Texas 77379

*Telephone (281) 379-6901*
*Telecopier (281) 379-6916*

July 2, 1998

Honorable Troy C. Bennett, Jr.
Clerk
Court of Criminal Appeal
P.O. Box 12308
Capitol Station
Austin, Texas 78711

RE:   Joseph Prystash vs. The State of Texas; On Appeal in Cause No. 72,572; In the Court
      of Criminal Appeals, for the State of Texas at Austin

Dear Mr. Bennett:

I received your notice that the above case is set for submission on Wednesday, September 9 at 9:00 a.m., and I do desire oral argument. Please notify the Court that I wish to present argument on Points of Error 1 and 2 (combined), and Point of Error 4. If time permits, Counsel will speak briefly to point of error three.

By copy of this letter I am notifying Counsel for the State.

Sincerely,

Janet Morrow

JM:cmb

cc:   Hon. John B. Holmes
      Harris County District Attorney
      201 Fannin
      Houston, Texas 77002



### Court of Criminal Appeals

### State of Texas
### Box 12308
### Capitol Station
### Austin 78711

MICHAEL J. McCORMICK
PRESIDING JUDGE

CHARLES F. (CHARLIE) BAIRD
MORRIS L. OVERSTREET
LAWRENCE E. MEYERS
STEPHEN W. MANSFIELD
SHARON KELLER
TOM PRICE
SUE HOLLAND
PAUL WOMACK
JUDGES

June 15, 1998

Ms.  Janet Morrow
Attorney at Law
6630 Cypresswood, Ste. 200
Spring, TX 77379

Mr. Robert A. Morrow
Attorney at Law
6630 Cypresswood, Ste. 200
Spring, TX 77379

Mr. John B. Holmes, Jr.
District Attorney
201 Fannin, Ste. 200
Houston, TX 77002

No. 72,572
Trial Court No. 723,036

STYLED:   **JOSEPH ANDREW PRYSTASH V. THE STATE OF TEXAS**

Dear Counselors:

The above case is set for submission to the Court on **WEDNESDAY, September 9, 1998**
**at 9:00 A.M.**

**ORAL ARGUMENT WILL BE PERMITTED,** however, **all parties shall notify** the Clerk of
this Court, **in writing, within 21 days** after the date of this notice, whether or not oral argument
is desired.  Failure to request oral argument constitutes waiver thereof.

**If oral argument is requested, please indicate the grounds of error to be argued.**

**PREVIOUSLY REQUESTED ORAL ARGUMENT ON BRIEFS OR PLEADINGS IS NOT**
**SUFFICIENT.**

-2-

**Twenty minutes oral argument will be permitted.**  Bench memorandums have been prepared for the judges in all argued cases setting forth grounds of error, authorities relied upon, a summary of the facts, etc.  These are read and studied by the Judges before argument.  Oral argument is not the Court's first knowledge of the case.  Prepare your argument with this in mind. **Brevity will be appreciated by the Court.**

**Sincerely,**

**TROY C. BENNETT, JR.**
**Clerk**

By  _Louise Pearson_
      **Chief Deputy Clerk**


cc:  Judge Presiding
     Charles Bacarisse
     Dick Wheelan

72572

**SUPREME COURT OF THE UNITED STATES**
**OFFICE OF THE CLERK**
**WASHINGTON, D. C. 20543**

**May 1, 2000**

Clerk
Court of Criminal Appeals of Texas
P.O. Box 12308
Capitol Station
Austin,  TX 78711

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAY 1 7 2000

TROY C. BENNETT, JR., CLERK

        Re:   Joseph Andrew Prystash
              v. Texas
              No.  99-8503
              (Your No. 72572)

Dear Clerk:

     The Court today entered the following order in the above

entitled case:

     The petition for a writ of certiorari is denied.

                         Sincerely,

                         *William K. Suter*

                         William K. Suter, Clerk

**SUPREME COURT OF THE UNITED STATES**

**OFFICE OF THE CLERK**

**WASHINGTON, D. C. 20543**


March 8, 2000


Clerk
Court of Criminal Appeals of Texas
P.O. Box 12308
Capitol Station
Austin, TX 78711

**RECEIVED IN**
COURT OF CRIMINAL APPEALS

MAR 1 0 2000

TROY C. BENNETT, JR., CLERK

      Re:  Joseph Andrew Prystash
           v. Texas
           No. 99-8503
           (Your No. 72572)


Dear Clerk:

    The petition for a writ of certiorari in the above entitled case was filed December 14, 1999 and placed on the docket March 7, 2000 as No. 99-8503.


              Sincerely,

              William K. Suter, Clerk

              by

              Sandra Elliott Spagnolo
              Assistant



# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---
## NO. 72,572
---

JOSEPH ANDREW PRYSTASH, Appellant

v.

THE STATE OF TEXAS

---
### APPEAL FROM
### HARRIS COUNTY
---

*WOMACK, J., delivered the opinion of the Court, in which MCCORMICK, P.J., and MANSFIELD, KELLER, and KEASLER, JJ., joined. KELLER, J., filed a concurring opinion. HOLLAND, J., filed a dissenting opinion, in which MEYERS and PRICE, JJ., joined. JOHNSON, J., filed a dissenting opinion.*

The appellant, who had agreed to murder Robert Fratta's wife for remuneration, engaged Howard Guidry to do the shooting. He provided Guidry with a gun, and on November 9, 1994, he transported Guidry to and from Fratta's house where the killing was done. The appellant was convicted of capital murder in July 1996. Penal Code § 19.03(a). Pursuant to the jury's answers to the special issues set forth in Code of

Prystash                                                                                           —2

Criminal Procedure article 37.071, sections 2(b) and 2(e), the trial judge sentenced the

appellant to death.  Article 37.071, § 2(g).[1]  Direct appeal to this Court is automatic.

Article 37.071, § 2(h).  The sufficiency of the evidence is not challenged.  The appellant

raises seventeen points of error and a "point for review."  We shall affirm.


## I. Voir Dire

In point of error number **seventeen**, the appellant complains that the trial court

erroneously denied a challenge for cause against Venire Member William Brittain.  The

appellant claims that Mr. Brittain was biased against a phase of the law in violation of

article 35.16(c)(2).  He argues that Mr. Brittain refused to acknowledge that the society in

the future dangerousness special issue[2] includes prison society.  A close reading of the

voir dire transcript, with the relevant parts underscored, reveals that Mr. Brittain under-

stood that the appellant might be less of a threat while in prison.

> Q: You have a forty-year-old man gets a life sentence.  You know Judge is telling
> you that he's going to do 40 years minimum.  So, now he's eighty years old.  You
> think, I don't really want him out as my neighbor.  I think he might be a threat to
> me out here.  But if he's in the penitentiary for the next forty years, he may not be
> a threat in that society in there?
> A: Right.
> Q: So, I might answer the question one way for a 17-year-old kid.  And I might
> answer it the opposite way for a guy when he's 40 when he goes in.  See that way
> of thinking?

---

[1]Unless otherwise indicated all future references to Articles refer to the Code of Criminal Procedure.

[2]"[W]hether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society."  Article 37.071, § 2(b)(1).

Prystash                                                                              —3

>       A: Yes.
>       Q: Does that make sense to you?
>       A: It makes sense.

From this portion of the voir dire, it is clear that the venire member understood the

prison versus free-world dichotomy that the appellant complains the venire member

refused to consider.  However, the voir dire questions that the appellant was asking

involved more than the distinction between prison society and civilian society.  His

inquiry also included the idea that the advanced age of the prisoner would lessen his

future dangerousness after release.

>       Q: Would you be willing to consider that here's my 20 minute question.  When
>       you look at society would you be willing to consider the age of the person and the
>       length of sentence when you're deciding if somebody is a threat to society or not?
>       A: No, not on the age if they've committed it.
>       Q: And tell me why you wouldn't?
>       A: Why I wouldn't?
>       Q: Right.
>       A: I think that they should have thought about that before they committed the
>       crime.  I wouldn't worry about the age.
>       Q: Okay.  And that's what you're deciding in the first phase, guilty or not guilty?
>       A: Right.
>       Q: But now I'm talking about in the context of the first special issue.  And you are
>       trying to decide whether that person is a threat to society.  What would you want
>       to know about when you look at whether they are a threat or not to society.
>       A: Their background, you know.  If they committed crimes or things before.
>       Q: Okay.  And what are you thinking about when you think about society?  What,
>       were you analyzing that threat?
>       A: Just want him on the street or not.
>       Q: Exactly.  He ain't going to be on the street.
>       A: Right.

This part of the voir dire shows that the venire member understood that some

offenders may be older than others when they go to prison, but that he refused to

Prystash                                                                                              —4

acknowledge the age of the offender to be relevant to an assessment of guilt.  It does not

reflect that he had discarded the prison versus free-world dichotomy.  When the defense

counsel focused the venire member's attention onto the punishment issues, he maintained

that he would not consider age in deciding future dangerousness.

> Q: So, that's what, the point I'm trying to get across to you.  And I know it's a new
> concept and I appreciate you working through it with me.  But he's not coming
> back on the street for 40 calendar years minimum.  So, it wouldn't be fair, would
> it, for you to answer that first special issue thinking he's going to get out tomorrow
> that he may be a threat but wouldn't be in the penitentiary?  See what I'm saying?
> A: I see what you are saying.
> Q: Would you be willing to consider society to include the penitentiary in this
> context?
> A: No, I still have to listen to the case, you know.
> Q: Right.
> A: To me, age doesn't make the difference.
> Q: You would not be willing to consider it in answering the first special issue?
> A: No.

The venire member repeated that he understood the dichotomy the defense had

presented, but he rejected the notion that the age of the offender when he went into prison

would be relevant.  When he answered the question of whether he would be willing to

consider society to include the penitentiary, he simply reserved the right to make his

determination of future dangerousness based on the particularized facts with which he

would be presented.  Considering the entirety of his testimony on the topic, it seems clear

that he understood that society included prison, but that he refused to consider the age of

an offender when determining future dangerousness.

Prystash                                                                                                    —5

A juror is not challengeable for cause because he refuses to give mitigating effect to particular evidence. *Morrow v. State*, 910 S.W.2d 471, 473 (Tex. Cr. App. 1995), *cert. denied*, 517 U.S. 1192 (1996). In *Soria v. State*, 933 S.W.2d 46, 65-66 (Tex. Cr. App. 1996), *cert. denied*, 520 U.S. 1253 (1997), we held that although a juror in a capital case "would give no weight to age in considering punishment [that] does not subject him to a challenge for cause." *Id.* at 66; *see also Massey v. State*, 933 S.W.2d 141, 150 (Tex. Cr. App. 1996) (holding that venire members were not challengeable for cause based on a refusal to consider age as mitigating evidence in capital case). Point of error number seventeen is overruled.

## II. Guilt Phase

In a **"point for review,"** the appellant asks us to review employment records of a witness, which the trial court sealed after inspecting them *in camera*. The witness was a sheriff's deputy who participated in the custodial interrogation that led to the appellant's written statement. The appellant subpoenaed the records because he thought they would contain favorable evidence about the witness's "interrogation practices." The trial court, finding no evidence favorable to the appellant, ruled that the records would not be given to him. We have examined the records, and we find that the trial court did not abuse its discretion in denying the appellant access to them.

### III. Punishment Phase Testimony

In the appellant's **third** point of error, he argues that the trial court erred by excluding from the jury during the punishment phase of his trial the prosecutor's plea offer of 55 years.  He argues that a plea offer of 55 years, as opposed to an offer of life, is mitigating evidence relevant to the jury's determination of special issue number two in that it reflects that the prosecutor did not believe the appellant to be a continuing danger to society.  The State counters that the plea offer was solely motivated by the State's desire for evidence against the appellant's co-defendants, and the offer did not reflect the prosecutor's evaluation of the appellant's death-worthiness.

The trial judge excluded the evidence without reference to any particular rule of evidence, nor did he require the prosecutor to state the specific grounds for the State's objection to the introduction of this evidence.  The trial judge excluded the evidence because he was concerned that if the plea agreement was made public, it might affect the trial of the appellant's co-defendant.  Concern for the impact on a subsequent trial should be dealt with in that case through the voir dire of prospective jurors, *see Rideau v. Louisiana*, 373 U.S. 723 (1963); *Adami v. State*, 524 S.W.2d, 693, 704 (Tex. Cr. App. 1975), a continuance, *see Hernandez v. State*, 643 S.W.2d 397, 399 (Tex. Cr. App. 1983), *cert. denied*, 462 U.S. 1144 (1983), or a venue change, *see, e.g., Brimage v. Texas*, 918 S.W.2d 466, 508 (Tex. Cr. App. 1996).

However, if the trial court's decision was correct on any theory of law applicable to the case, we will sustain it.  *McFarland v. State*, 845 S.W.2d 824, 846 n.15 (Tex. Cr.

Prystash                                                                                                —7

App. 1992), *cert. denied*, 508 U.S. 963 (1993).  This is true even if the trial judge failed

to give any reason or used the wrong reason for the ruling.  *Romero v. State*, 800 S.W.2d

539, 543 (Tex. Cr. App. 1990).  Our standard of review for evidentiary decisions by the

trial judge is the abuse of discretion standard.  *Montgomery v. State*, 810 S.W.2d 372,

378 (Tex. Cr. App. 1990); *Marras v. State*, 741 S.W.2d 395, 404 (Tex. Cr. App. 1987).

In *Smith v. State*, 898 S.W.2d 838 (Tex. Cr. App.), *cert. denied*, 516 U.S. 843

(1995), this Court upheld the trial court's exclusion of the State's plea bargain offer of

life imprisonment.  The State had argued in *Smith* that the excluded evidence of the plea

bargain was inadmissible under Rule 408.[3]  After ruling that Rule 408 is inapplicable to

plea offers, we evaluated the trial court's decision under Rule 403.  *Id.* at 843.  We

admitted that the plea bargain "may be *minimally* relevant to a State District Attorney's

office belief that the defendant was not a future danger."  *Id.* at 844.  However, we found

that the probative value of such evidence is substantially outweighed by the danger of

both unfair prejudice and of misleading the jury.  *Id.* at 843-44; Tex. R. Evid. 403.  The

multitude of motivations that a prosecutor may have in offering a life sentence in a capital

case dilute the probative value of that offer and may mislead the jury as to the true

motivations of the prosecutor.  *See id.* at 844.

---

[3]"Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount is not admissible to prove liability for or invalidity of the claim or its amount.  Evidence of conduct or statements made in compromise negotiations is likewise not admissible.  This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations.  This rule also does not require exclusion when the evidence is offered for anther purpose, such as proving bias or prejudice or interest of a witness or a party, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."  TEX. R. EVID. 408.

We also identified a policy rationale for excluding plea offers by the government. Public policy favors the conclusion of litigation by compromise and settlement, both in criminal and civil cases, and allowing a criminal defendant to introduce evidence about a sentence offered by the State during plea negotiations clearly militates against this policy. *See generally id.* at 844 n.6.  If evidence of plea bargain offers were admissible, "the State would be ably discouraged from making such offers in the future, and plea bargaining is essential to the administration of justice in America." *Id.*  The decision to admit or exclude this evidence was soundly within the discretion of the trial judge. We cannot say that the trial court abused its discretion in excluding this evidence.  The appellant's third point of error is overruled.

In point of error number **four**, the appellant complains that the trial court excluded part of the testimony of Dr. Walter Quijano from the jury during sentencing.  The proposed testimony of Dr. Quijano would have been that he would not consider the appellant to be a continuing threat while in prison.  Dr. Quijano based his opinion on the appellant's current jail classification as nonviolent, the offense with which the appellant was charged, and the level of resources that the prison system possesses to control the danger of inmates.  This testimony would have been used to convince the jury that under the special issue the appellant was not a continuing threat posing a future danger to society.

The trial court ruled that Dr. Quijano might talk about the prison system classifica-tion and level of resources, but he might not speculate how the classification might apply

to the appellant.  The trial judge also ruled that Dr. Quijano could not mention the

appellant's current jail classification, but he could state that he had reviewed the jail

records of the appellant in forming his opinion.  The appellant made a timely objection

when the trial judge restricted the testimony, and the issue was properly preserved for

appeal.  The appellant argues that these restrictions on the testimony of Dr. Quijano were

an abuse of discretion by the trial judge.  We will uphold evidentiary rulings on appeal if

the trial court's decision was correct on any theory of law applicable to the case.  *See*

*McFarland*, 845 S.W.2d at 846 n.15.

     The trial court prohibited Dr. Quijano from hypothesizing as to the application of

the prison classification system to the appellant.  However, Dr. Quijano stated that he was

unable to predict the classification that the prison system would assign to the appellant.

The testimony of Dr. Quijano concerning the prison classification system was not

particularized to the appellant, and Dr. Quijano did not establish that the current jail

classification would dictate his classification in prison.  Therefore, this restriction on the

testimony of Dr. Quijano cannot have prevented Dr. Quijano from testifying that he did

not consider the appellant to be a continuing threat to society.  The appellant cannot

complain about the restriction of the trial court on the application of the prison classifica-

tion system to the appellant because Dr. Quijano had no opinion as to that application.

     The other restriction on the testimony of Dr. Quijano was that the trial court

prohibited Dr. Quijano from testifying as to the current jail classification of the appellant.

The jail classification of the appellant as nonviolent was inadmissable hearsay.  The

Prystash                                                                —10

jailer's opinion of the dangerousness of the appellant was hearsay because it was a

statement not made by Dr. Quijano that would have been offered to prove the truth of the

matter asserted, that the defendant was not dangerous.  However, the opinion of an expert

witness may be informed by the opinion of others.  Dr. Quijano was properly permitted to

state that he had reviewed the jail classification as a basis for his expert testimony, but the

classification itself remained inadmissable.  *See* Tex. R. Evid. 703, 705(a).[4]  The trial

court did not abuse his discretion in excluding the hearsay underlying the opinion of Dr.

Quijano.

     The appellant argues that Dr. Quijano was prohibited from stating his opinion that

the appellant would not pose a continuing threat because the trial court excluded the

underlying bases for his opinion.  As we have said, the trial court was within its discre-

tion in excluding the jail classification of the appellant.  Never did the trial court prevent

Dr. Quijano from stating his opinion of the continuing threat posed by the appellant.  The

notion that Dr. Quijano was unable to testify that he thought the appellant did not pose a

continuing threat without also stating the current jail classification is without merit,

because the trial court permitted Dr. Quijano to state that he had reviewed the jail

records.  Dr. Quijano testified that the prison system had sufficient resources to control

---

[4]"The facts or data in the particular case upon which an expert bases an opinion or inference may be those
perceived by or made known to him at or before the hearing.  If of a type reasonably relied upon by experts in the
particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible into
evidence." Tex. R. Evid. 703.  "The expert may testify in terms of opinion or inference and give his reasons
therefore without prior disclosure of the underlying facts or data, unless the court requires otherwise.  The expert
may in any event disclose on direct examination, or be required to disclose on cross-examination, the underlying
facts or data, subject to subparagraphs (b) through (d)." TEX. R. EVID. 705(A).

Prystash                                                                                                    —11

the dangerousness of the inmates.  Dr. Quijano was free to elaborate as to the threat

posed by the appellant, but the appellant never inquired beyond this general question.

The trial court never prevented defense counsel from asking Dr. Quijano if he thought

that the appellant posed a continuing threat.  Since we find no reversible error, point of

error number four is overruled.


## IV. Punishment Phase Instructions

Although the evidence showed that Howard Guidry engaged in the conduct of

murder, the court's charge at the guilt stage of the trial authorized the jury to find the

appellant criminally responsible for Guidry's conduct as a party.[5]  In such cases, article

37.071, section 2(b)(2) requires that at the punishment stage "the court shall submit the

following issue[] to the jury: … whether the defendant actually caused the death of the

deceased or did not actually cause the death of the deceased but intended to kill the

deceased or another or anticipated that a human life would be taken."[6]

Before trial the appellant moved the court to hold the issue unconstitutional.

Counsel said, "Judge, the defendant's position is that we would waive that [issue], if at all

---

[5] *See* TEX. PENAL CODE §§ 7.01 ("Parties to Offenses"), 7.02 ("Criminal Responsibility for Conduct of Another"), and 7.03 ("Defenses Excluded").

[6] The issue was added to the article by the Act of June 16, 1991, 72d Leg., R.S., ch.838, § 1, 1991 Tex. Gen. Laws 2898, 2899.  *Compare Enmund v. Florida*, 458 U.S. 782, 797 (1982) (Eighth Amendment does not permit imposition of the death penalty on "one who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed"), *with Tison v. Arizona*, 481 U.S. 137, 152 (1987) (Eighth Amendment does not prohibit the death penalty in the case of "the defendant whose participation is major and whose mental state is one of reckless indifference to the value of human life").

Prystash                                                                                —12

possible. We consider Special Issue No. 2 to be unconstitutional and on those grounds as

previously stated to the Court, we don't want that question." Although the court did not

agree that the issue was unconstitutional, it did agree to omit the issue from the jury

charge and to forbid the State from asking the prospective jurors about it in voir dire

examination.

Now in points of error **one and two** the appellant argues that the trial court erred

in failing to submit the issue in the jury charge and in accepting the verdict without an

answer to the issue. He relies on *Powell v. State*, 897 S.W.2d 307 (Tex. Cr. App. 1994).

In *Powell* we considered a capital case which had been retried after a reversal on

appeal. During the pendency of that appeal, an amendment of article 37.071 had changed

the requirements for the court's charge at the punishment stage. The amendment deleted

a requirement that the charge include an issue on "deliberateness,"[7] substituting an issue

for cases that were tried on the law of parties.[8] The amendment did not require any

change of the charge in Powell's trial because he committed his offense before the

effective date of the amending act, which had a savings clause that continued in effect the

former law.[9] Nevertheless Powell requested that the trial court submit the new issue

rather than the former one, and the court did so. We held that this was a reversible error.

---

[7]"[W]hether the conduct of the defendant that caused the death of the defendant was committed deliberately and with the reasonable expectation that the death of the deceased or another would result." Act of June 14, 1973, 65th Leg., R.S., ch. 426, art. 1, § 1, 1973 Tex. Gen. Laws 1122, 1125, *repealed by* Act of June 16, 1991, 72d Leg., R.S., ch.838, § 1, 1991 Tex. Gen. Laws 2898, 2899.

[8]See n.6 and accompanying text, *supra*.

[9]See Act of June 16, 1991, 72d Leg., R.S., ch.838, § 5, 1991 Tex. Gen. Laws 2898, 2901.

Prystash                                                                                            —13

The *Powell* analysis was done in terms of preservation of error. It began with

*Marin v. State*, 851 S.W.2d 275 (Tex. Cr. App. 1993), in which we set out the basic

concept that in preserving error for appellate review there are three classes of rules:

forfeitable rights which require that a party request the court to act, waivable rights which

must be implemented unless affirmatively waived by the party, and absolute requirements

which cannot be waived or forfeited. *Powell*, 897 S.W.2d at 316. The Court found that

Powell's "case is analogous to those cases addressing the waiver of statutorily required

sentences and sentencing procedures." *Ibid.*[10] The analysis ended thus (*id.* at 317):

> We cannot allow trial courts and criminal defendants to mutually consent to
> usurp the powers of the legislature. Thus, we must affirm the principle of
> absolute requirements and prohibitions which are not optional, waivable, or
> forfeitable, stating that neither a capital murder defendant nor a trial court
> may ignore the statutory scheme mandated by the effective dates of Article
> 37.071. The effective dates of statutes are absolute requirements, non
> waivable and nonforfeitable; criminal defendants may not in Texas legislate
> the law to be applied in their case.[11]

The analysis of the question in terms of the rules for waiver ignores the crucial

distinction between those rules and the law of invited error. The question was not

---

[10]The principal case that the Court found analogous, *Ex parte Sims*, 868 S.W.2d 803 (Tex. Cr. App.
1993), held that a statutorily required sentencing procedure was an absolute requirement which was not waivable.
That holding has since been overruled as incorrect. *See Ex parte McJunkins*, 954 S.W.2d 39 (Tex. Cr. App. 1997).
Because we resolve the points before us with the doctrine of invited error, we shall not further address the
particular question of whether parties may waive the statutory requirements for jury charges or the general question
of why a statutory requirement may be said to be absolute.

[11]This focus on effective dates of statutes and usurpation of legislative power introduced "a subtle but
significant distortion of the true issue." *Powell v. State*, 897 S.W.2d at 318 (Clinton, J., concurring). Although the
issue that Powell asked to be submitted was taken from a subsequent act of the legislature, that was irrelevant to the
decision of the case. The true question was the omission of the issue that was required by the applicable statute.
The result and the reasons for it would have been the same if Powell had requested that an issue of his own
creation, or no issue at all, be substituted.

whether Powell could waive a right, it was whether he could complain of an action he

requested; this is more than, and different from, waiver.

> Waiver might usefully be distinguished from what is sometimes called
> "invited error." If a party affirmatively seeks action by the trial court, that
> party cannot later contend that the action was error. This is not really a
> waiver of error previously committed. Rather, it is part of the definition of
> what can constitute error, and quite reasonably defines error of which a
> party may complain as excluding those actions of the trial court actually
> sought by the party in that tribunal.

George E. Dix and Robert O. Dawson, 43 *Texas Practice— Criminal Practice and*

*Procedure* § 42.141 (Supp. 1999) (footnote omitted).

The doctrine of invited error is properly thought of, not as a species of waiver, but

as estoppel. This Court first pointed out the relationship between the doctrines of

estoppel and invited error in jury charges in *Carbough v. State*, 49 Tex. Cr. 452, 455–56,

93 S.W. 738, 738 (1906):

> In the later case of *M., K. & T. Ry. v. Eyer et al.*, [96 Tex. 72, 74–75, 70 S.
> W. 529, 529–30 (1902),] *supra*, the question again came under review
> before the Supreme Court. Speaking of invited error, Chief Justice Gaines,
> delivering the opinion of the court, said: "The rule in question is but a
> deduction from the doctrine of estoppel. Where a party by a request for a
> ruling leads the court into error, he should be precluded from claiming a
> reversal of the judgment by reason of the error so committed. To hold
> otherwise would be to permit him to take advantage of his own wrong.
> Where the court, upon the trial is requested to affirm a proposition of law in
> the charge, and it is so affirmed the rule applies. Such was the case of
> *Railroad Co. v. Sein*, 89 Tex. 63, 33 S. W. 215, 558." This is the last
> enunciation of this doctrine that has been called to our attention at the
> hands of the Supreme Court. Numerous decisions have been cited *supra*,
> from this and the Courts of Civil Appeals of this state, affirming the doc-
> trine laid down by these decisions. If the rule is correct, and it seems the
> authorities cited settle it, it is not reversible error that there may be some
> omission or some defect in the requested charge given, and the authorities

seem to place it upon the ground that the party complaining is estopped, and by asking the special charge, whether given or refused, affirms the proposition laid down by the court in the charge given.

Just as the law of entrapment estops the State from making an offense of conduct that it induced, the law of invited error estops a party from making an appellate error of an action it induced.

The rule of invited error in jury charges is one of long standing, and it applies to the improper submission of jury charges at the punishment stage of a capital trial.[12] The rejection of it in *Powell* was not justified by the analysis which asked whether a statutory requirement could be waived.

The *Powell* Court gave another reason for reversal.[13]  It said that a waiver of trial by jury, which is forbidden in a capital case in which the State sought the death penalty,[14] occurred when the verdict did not include a special issue which was required by the applicable statute.  There are several fatal flaws in this reasoning.  To begin with, if this were an improper waiver, the doctrine of invited error estops the appellant from complaining of it.  Second, it is untrue on its face; the case was tried to a jury.  The worst that can be said is that the jury returned a verdict which did not answer one issue.  Third, if an

---

[12]*Livingston v. State*, 739 S.W.2d 311, 341 (Tex. Cr. App. 1987), *cert. denied*, 487 U.S. 1210 (1988).

[13]The bare majority of five judges in *Powell* did not speak with one voice.  Judges Clinton and Maloney filed concurring opinions which said they "joined" Judge Meyers' opinion, but which did not embrace its central holding.  Judge Clinton said that the issue of whether an absolute requirement could be waived was "a subtle but significant distortion of the true issue," which he identified as waiver of the right to trial by jury.  *Powell v. State*, 897 S.W.2d at 318.  Judge Maloney identified that issue as well.  *See id.* at 319.  Judge Meyers' opinion adopted their reasoning in a footnote.  *See id.* at 317 n.6.

[14]*See* TEX. CODE CRIM. PROC. article 1.14(a).

omission of a punishment issue amounted to waiver of trial by jury, then any omission of

an element from the jury charge at the guilt stage of any criminal case would amount to a

waiver of trial by jury on guilt.  Just as a statute requires a jury verdict on the punishment

issues in a capital trial, the United States Constitution requires a jury verdict on each

element of the offense at the guilt stage of every criminal trial.  *See Richardson v. United*

*States*, 526 U.S. ___, ___, 119 S. Ct. 1707, 1711, 143 L. Ed. 2d 985, 994 (1999).  But we

do not treat omissions of the elements of offenses as waivers.[15]  *See Almanza v. State*, 686

S.W.2d 157, 172–74 (Tex. Cr. App. 1984) (holding that the omission of an element from

the authorization paragraph in a non-capital case is error subject to a harm analysis in

which the appellate court reviews the entire jury charge and the state of the evidence in

the case to decide whether the error requires reversal).  They are subject to the normal

requirements for preservation of error.  And the same should be true for the punishment

issues in a capital case.

     We should not have permitted Powell to raise as error an action that he procured.

Insofar as we did so, our decision in *Powell v. State*, 897 S.W.2d 307, 314–19 (Tex. Cr.

App. 1994), is overruled.

     Just as we should not have permitted Powell to complain of the trial court's

submitting a jury charge as he requested, we will not permit this appellant to complain of

---

[15]Nor do the federal courts.  *See Neder v. United States*, 527 U.S. ___, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).

the trial court's deleting a jury charge as he requested. The appellant's first and second points of error in this case are overruled under the doctrine of invited error.

In point of error number **nine**, the appellant asserts that the refusal of the trial court to instruct the jury that a life sentence would be imposed if they failed to answer a special issue is reversible error. There is no constitutional prohibition to concealing from the jurors the consequences of their deliberations, so long as they are not misled into believing that ultimate responsibility for the verdict rests elsewhere. *McFarland v. State*, 928 S.W.2d 482, 519 (Tex. Cr. App. 1996); *Draughon v. State*, 831 S.W.2d 331, 338 (Tex. Cr. App. 1992), *cert. denied*, 509 U.S. 926 (1993). "The jury is not informed of the consequences of a hung jury, but each juror will know that without his or her vote the death sentence cannot be imposed." *Lawton v. State*, 913 S.W.2d 542, 559 (Tex. Cr. App. 1995) *cert. denied*, 519 U.S. 826 (1996). Point of error number nine is overruled.

The appellant complains in point of error number **ten** that the trial judge errone-ously refused to instruct the jury that they could not consider unadjudicated offenses during the punishment phase unless the prosecution had proven them beyond a reasonable doubt. The charge to the jury stated that the State was required to prove each of the special issues beyond a reasonable doubt. The charge to the jury adequately protected the appellant because the charge comprehends the burden of proof that the State bears for the entirety of evidence introduced during the punishment phase. We have consistently held that it is not error for the trial judge to refuse to give a separate instruction concerning unadjudicated offenses when the State is required to prove the punishment issues beyond

a reasonable doubt. *Burks v. State*, 876 S.W.2d 877, 911 (Tex. Cr. App. 1994), *cert.*

*denied*, 513 U.S. 1114 (1995); *Coble v. State*, 871 S.W.2d 192, 208 (Tex. Cr. App. 1993),

*cert. denied*, 513 U.S. 829 (1994); *Lewis v. State*, 815 S.W.2d 560, 567 (Tex. Cr. App.

1991), *cert. denied*, 503 U.S. 920 (1992); *Santana v. State*, 714 S.W.2d 1, 11-12 (Tex.

Cr. App. 1986).

The appellant argues that our decision in *Mitchell v. State*, 931 S.W.2d 950 (Tex.

Cr. App. 1996), amends this line of decisions. *Mitchell* held that in a noncapital case, a

defendant is entitled to a limiting instruction that informs the jury that unadjudicated

offenses offered during the punishment phase must be proven beyond a reasonable doubt.

*Id.* at 954. However, *Mitchell* does not take into account the instruction in a capital case

that the State must prove the special issues beyond a reasonable doubt. *Mitchell*,

therefore, is inapplicable to the capital sentencing structure, and the appellant's point of

error is overruled.

In point of error number **eleven**, the appellant argues that the trial court erred in

refusing to give an instruction to the jury that limited their consideration of other bad acts

to the future dangerousness special issue. In point of error number **twelve**, the appellant

argues that the trial court erred in refusing a limiting instruction that the jury disregard

evidence of the commission of the primary offense in deciding whether he had committed

the other bad acts. The other bad acts to which the appellant refers are an aggravated

robbery of a car salesperson, a dismissed charge of attempted murder of his brother-in-

Prystash                                                                        —19

law, and the burglary of the victim's home and assault on the victim before the instant

murder.

The trial court refused to limit the jury's consideration of the appellant's other bad

acts to the future dangerousness special issue.  Because the other bad acts of the appellant

were also relevant to the mitigation special issue, which was the only other special issue

before the jury at punishment, the trial court did not err in refusing to give the limiting

instruction.  A "limiting instruction is not required where evidence can be considered on

any relevant issue in the case." *Lane v. State*, 822 S.W.2d 35, 40 (Tex. Cr. App. 1991)

(upholding the refusal to give a limiting instruction that would have restricted the jury's

consideration of other bad acts to the future dangerousness special issue because the other

bad acts were arguably relevant to the deliberateness special issue).  Appellant's eleventh

point of error is overruled.

When evidence is offered and admitted for a limited purpose, the party who opposes

admission of that evidence bears the burden to request a limiting instruction.  *Garcia v. State*,

887 S.W.2d 862, 878 (Tex. Crim. App. 1994), *cert. denied*, 514 U.S. 1021 (1995).  The

appellant made a general objection when the State introduced the evidence that presumed to

restate any objections made at trial, but he did not object to the introduction of the primary

offense and did not request any limiting instructions.  The failure of the appellant to object

to the introduction of the primary offense at punishment or to request a limiting instruction

when the evidence was offered forfeited any error on that issue.  The appellant's twelfth

point of error is overruled.

The appellant argues in his **thirteenth** point of error that the trial court erred in refusing to submit special-verdict forms to the jury that would specify whether they had found each of the unadjudicated offenses to have been committed.  The appellant claims that this Court cannot perform a meaningful sufficiency review of the jury's answer to the future dangerousness special issue without answers to the requested special-verdict forms.  Setting aside that the appellant has not challenged the sufficiency of the jury's answer to the future dangerousness special issue, we observe that there is no requirement that the State prove all of the elements of unadjudicated offenses submitted at the punishment phase before the trial court can admit the evidence.  *See Spence v. State*, 795 S.W.2d 743, 758-59 (Tex. Cr. App. 1990), *cert. denied*, 499 U.S. 932 (1991).  In *Matchett v. State*, 941 S.W.2d 922 (Tex. Cr. App. 1996), *cert. denied*, 521 U.S. 1107 (1997), we held that the lack of this requirement meant that the trial court is under no obligation to submit to the jury special-verdict forms listing the elements of unadjudicated offenses alleged by the State at punishment.  *See id.* at 937.  Nor do we think that the future dangerousness special issue necessitates special-verdict forms as to the commission of unadjudicated offenses alleged at punishment.  Point of error thirteen is overruled.

In point of error number **fourteen**, the appellant complains that the trial court erroneously refused his request that the jury be charged that they may consider any evidence to be mitigating even if irrelevant to the moral culpability of the defendant.  He claims that his requested charge was necessary to correct the definition of mitigating evidence in article 37.071, section 2(f)(4), which unconstitutionally limits the definition of mitigating evidence

Prystash                                                                                    —21

to evidence that reduces the appellant's moral blameworthiness.  Faced with a similar

challenge in *Cantu v. State*, 939 S.W.2d 627, 648 (Tex. Cr. App.), *cert. denied*, 118 S.Ct.

557 (1997), we held that article 37.071, section 2(e) solves any potential narrowing problem

in section 2(f)(4).  Article 37.071, section 2(e) instructs the trial court to charge the jury that

they must "take into consideration '*all* of the evidence, *including* the circumstances of the

offense, the defendant's character and background, *and* the personal moral culpability of the

defendant' in determining whether sufficient mitigating circumstances exist to warrant a life

sentence" *Cantu*, 939 S.W.2d at 648-49 (emphasis added in *Cantu*).  Although mitigating

evidence is statutorily defined as that evidence which "a juror might regard as reducing a

defendant's moral blameworthiness," article 37.071, section 2(f)(4), the trial court's

instructions pursuant to section 2(e) provide the jury with a vehicle to respond to a broader

range of mitigating evidence. *See Cantu*, 939 S.W.2d at 648-49; *Lawton*, 913 S.W.2d at 555-

56; *Goff v. State*, 931 S.W.2d 537, 556 (Tex. Cr. App. 1996), *cert. denied*, 520 U.S. 1171

(1997).

      However, "in order for mitigating evidence to have relevance beyond the scope of the

special issues, there must be relevance between the mitigating evidence and the circum-

stances surrounding the crime that tends to excuse or explain the criminal act, so as to make

that particular defendant less deathworthy." *Goff*, 931 S.W.2d at 556.  Although article

37.071, section 2(e) allows the consideration of background and character evidence in

addition to the personal moral culpability of the defendant, section 2(e) does not necessarily

permit the introduction of any evidence that the defense believes may sway a jury to render

Prystash                                                                                                    —22

a life verdict.  We have held that evidence that relies on mere sympathy or emotional response is irrelevant to the jury's consideration of the deathworthiness of the defendant. *See Rhoades v. State*, 934 S.W.2d 113, 126 (Tex. Cr. App. 1996) (ruling that photographs of the defendant which depict a cheerful early childhood are irrelevant because such evidence has no relationship to his conduct); *Goff*, 931 S.W.2d at 555-56 (ruling that the homosexuality of the victim, if unknown to the defendant and unrelated to the crime, is irrelevant to the jury's ability to consider and give mitigaing effect  to the background or character of the defendant); *accord McFarland*, 928 S.W.2d at 522 (upholding an anti-sympathy charge as properly focusing the attention of the jury on those factors relating to a moral inquiry into the culpability of the defendant).

The instruction that the appellant requested attempted to change the statutory balance between the definition of mitigating evidence in section 2(f)(4) and the broader evaluation of the deathworthiness of the defendant in section 2(e).  The wording of the instruction that the trial court denied would have provided an alternate definition of mitigating evidence, which we have previously held is "contrary to the law." *Skinner v. State*, 956 S.W.2d 532, 542 (Tex. Cr. App. 1997), *cert. denied*, 118 S.Ct. 1526 (1998).  The jury in the appellant's case was instructed that a mitigating circumstance may include, but is not limited to, any aspect of a defendant's character, background, record, emotional instability, intelligence or circumstances of the crime which could make a death sentence inappropriate.  The appellant does not complain of any evidence to which the jury could not give effect; therefore, "even

if the statute is deficient in the way that he suggests, he did not suffer the deficiency."

*McFarland*, 928 S.W.2d at 518.  The appellant's fourteenth point of error is overruled.

## V. Special Issues Challenges

In the appellant's **fifth through seventh** points of error, he claims that the mitigation

issue at punishment, article 37.071, section (2)(e), violates the Eighth Amendment of the

United States Constitution.   In his **fifth** point of error, the appellant contends that the

mitigation issue unconstitutionally omits a burden of proof.  We have held that because there

are no constitutional limits on the jury's discretion to consider mitigating evidence, the

constitution does not require a burden of proof.  *Anderson v. State*, 932 S.W.2d 502, 508

(Tex. Cr. App. 1996) *cert. denied*, 521 U.S. 1122 (1997).   The appellant acknowledges the

case law against him, but presents an argument that he claims this court has overlooked in

previous decisions.   The appellant argues that the mitigation special issue permits the

introduction of nonstatutory aggravating evidence in addition to mitigating evidence, and this

nonstatutory aggravating evidence is not subject to a burden of proof in violation of *Walton*

*v. Arizona*, 497 U.S. 639 (1990).  The nonstatutory evidence of which the appellant primarily

complains is the introduction of victim impact evidence.

However, the appellant's reliance on *Walton* is misplaced.  *Walton* ruled that the

allocation of the burden of proof as to mitigating factors cannot remove the burden of proof

that the State must bear in proving elements of the crime or statutory aggravators.  *Walton*,

497 U.S. at 650.  The lack of a burden of proof in the mitigation special issue does not lessen

the State's burden to prove the elements of capital murder, which include the statutory

Prystash —24

aggravators. The jury does not decide the mitigation special issue until after the State has proven the elements of capital murder and that the defendant is a future danger, article 37.071, section 2(b)(1); therefore the concerns of *Walton* are not implicated. The relevance of victim impact evidence to mitigation evidence was countenanced by the United States Supreme Court in *Payne v. Tennessee*, 501 U.S. 808 (1991), *accord Ford v. State* 919 S.W.2d 107, 115-16 (Tex. Cr. App. 1996).

In *Payne*, the Supreme Court explained "that a State may properly conclude that for the jury to assess meaningfully the defendant's moral culpability and blameworthiness, it should have before it at the sentencing phase evidence of the specific harm caused by the defendant." *Payne*, 501 U.S. at 825. The thrust of *Payne* is that victim impact evidence is relevant to counteract "the mitigating evidence which the defendant is entitled to put in," *id.*, that is, victim impact evidence is relevant to the normative decision of the jury under section 2(e). Victim impact evidence is not subject to a burden of proof because it is relevant to the mitigation special issue instead of to a statutory aggravator found in the definitions of capital murder. The appellant's fifth point of error is overruled.

In the appellant's **sixth** point of error, he claims that the mitigation special issue is unconstitutional because it fails to provide meaningful appellate review of the jury's decision. We previously have ruled that the normative decision of the jury as to the mitigation special issue is not amenable to appellate review. *See McFarland*, 928 S.W.2d at 498-99; *Morris v. State*, 940 S.W.2d 610, 614 (Tex. Cr. App. 1996). Point of error number six is overruled.